**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARLON SPRATLEY,
Plaintiff-Appellant,

v.

HAMPTON CITY FIRE DEPARTMENT;

No. 96-2127

GREGORY B. CADE, Individually and
in his Capacity as Fire Chief of
Hampton City Fire Department,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
J. Calvitt Clarke, Jr., Senior District Judge.
(CA-95-91-4)

Submitted: August 29, 1997

Decided: September 26, 1997

Before HALL, MURNAGHAN, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Beverly D. Crawford, Sa'ad El-Amin, EL-AMIN & CRAWFORD,
Richmond, Virginia, for Appellant. A. Paul Burton, Jr., Cynthia
Eppes Hudson, CITY ATTORNEY'S OFFICE, Hampton, Virginia,
for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Marlon Spratley appeals from the district court's order granting summary judgment in favor of Defendants and dismissing his employment discrimination action alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §§ 2000e to 2000e-16 (West 1994 & Supp. 1997). We affirm.

Spratley, an African-American male, was employed from 1985 to 1994 as a firefighter and a medic/firefighter by the Defendant Hampton City Fire Department ("City"). In May 1993, Spratley was involved in an accident with a citizen driver while driving a City fire truck to an emergency call. The accident investigator emphasized, in his report, the citizen driver's inattention to the emergency vehicle, and noted that the "citizen driver contributed to the accident." (Joint Appendix [J.A.] 150). The investigator also noted that "firefighters need to be cautious when responding, particularly when making abnormal traffic movements." (Id.) Defendant Fire Chief Gregory Cade reviewed the accident report, determined that Spratley was at fault for the accident, and issued a written reprimand. Spratley filed a grievance which the citizen grievance panel denied at the final stage of the grievance process.

Following the denial of his grievance, Spratley called in sick on December 2, 1993. Spratley provided a doctor's note indicating that he suffered from Cephalalgia[1] and could not return to work until December 17, 1993. Also in December 1993, Spratley filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that his reprimand was the result of race discrimination. The Defendants received notice of the charge.

_____
[1] DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 299 (28th ed. 1995), defines Cephalalgia as a headache.

Spratley continued to call in sick and turned in a doctor's note covering the period from December 2, 1993, to February 2, 1994. The note diagnosed Spratley with cluster headaches and situational depression. At that time, Spratley was authorized to use his sick leave and was paid his full salary for the time off.

On February 2, 1994, Spratley requested to continue sick leave and submitted another doctor's note stating that he could not return to work until March 2, 1994. Chief Cade requested that Spratley obtain information from his doctor explaining in more detail the need for an additional month of sick leave, and enclosed a City medical certification form for Spratley's doctor to fill out.[2] Spratley failed to return the form. Chief Cade then directed Spratley to report to Dr. Timothy Raines for a fitness for duty examination that had been scheduled for him.[3] Spratley failed to report to Dr. Raines. Chief Cade then attempted to meet with Spratley to discuss the situation. Spratley refused to meet and suggested that Chief Cade speak with his attorney.

Chief Cade then wrote Spratley proposing to terminate his employment effective March 16, 1994, because of (1) insubordination in his refusal to take necessary steps to substantiate his need for sick leave, and (2) unauthorized absence due to failure to comply with leave policies. On March 22, 1994, Chief Cade informed Spratley that his termination would be effective March 31, 1994, and that he had the right to grieve the termination. Spratley did not grieve the termination but did file another complaint with the EEOC alleging denial of sick leave and retaliatory firing.

_____

[2] The City Personnel Policy Manual provides that: "[w]hat constitutes acceptable evidence of illness, injury, or other incapacity of the employee himself/herself shall be determined by the department head. . . . When there is reason to believe that an employee is abusing sick leave privileges, a medical certificate may be required prior to approving sick leave of any duration." (J.A. 80).

[3] The City Personnel Policy Manual provides that: "[i]n cases where an employee's continued and/or periodic absences severely impact on productivity, the supervisor may arrange for a fitness for duty examination by a physician at the City's expense." (J.A. 75).

In July 1995, Spratley filed a complaint in the district court alleging (1) that the City violated Title VII of the Civil Rights Act of 1964 by terminating his employment in retaliation for his filing of a discrimination charge with the EEOC; (2) that both the City and Chief Cade discriminated against him on the basis of his race in violation of 42 U.S.C. § 1981 (1994), in terminating his employment; (3) that Chief Cade violated 42 U.S.C. § 1983 (1994); (4) that the City breached his employment contract; and (5) that the City and Chief Cade are liable for intentional infliction of emotional distress. The Defendants filed a motion for summary judgment, which the district court granted.

On appeal, Spratley asserts that the district court erred in granting summary judgment to the Defendants because the Defendants wrongfully discharged him because of his race and in retaliation for his filing of a complaint with the EEOC. To establish a claim of employment discrimination under 42 U.S.C. § 1981, or an equal protection claim under 42 U.S.C. § 1983 on the basis of race, Spratley must meet the same proof scheme as required under Title VII. See Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1136 (4th Cir. 1988); Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1287 (4th Cir. 1985). Thus, to establish a prima facie case of discrimination, Spratley must show that: (1) he is a member of a class protected by Title VII; (2) his misconduct was of comparable seriousness to the misconduct of employees not within the protected class; and (3) the discipline imposed on him was more severe than that imposed on the similarly situated employees. See Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993). Once a prima facie case is established, the burden shifts to the defendants to produce evidence that shows some legitimate, nondiscriminatory reason for their actions. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the defendants meet this burden, the burden then shifts back to the plaintiff to show that the reason proffered by the defendants was false and that race was the real reason for the adverse action. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 514-15 (1993).

Our review of the record and the district court's opinion discloses that this appeal is without merit. Although Spratley established the first two elements of the prima facie case, he failed to offer evidence

4

of other firefighters, outside the protected class, who engaged in similar misconduct but were not discharged. For example, Spratley compares himself with firefighter Cappendyck, who received a two-day suspension for a one-time incident involving insubordination and the careless use of city property. Spratley next compares himself with Captain Garris, who was reprimanded for improper behavior and failure to comply with an instruction established by the Department head, and Captain Hensley, who was suspended and demoted for failing to obey a direct order from Chief Cade to not bring his girlfriend to a training exercise. Hensley was originally dismissed for his conduct but, following a grievance, the dismissal was reduced. However, these incidents are not sufficiently similar to Spratley's abuse of leave to warrant a finding that the Defendants disciplined Spratley more severely than similarly situated employees. The evidence clearly indicates that the reason for Spratley's discharge was due to his failure to come to work for two months, his failure to present sufficient medical evidence of his inability to work, and his failure to attend a fitness for duty examination. Spratley fails to establish that the real reason for his dismissal was race.

Spratley's claim of retaliatory discharge also fails. To establish a prima facie case of retaliatory discharge, a plaintiff must show that (1) he engaged in protected activity, (2) the employer took adverse employment action against him, and (3) there was a causal connection between the protected activity and the adverse action. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). Once this prima facie case is established, it may be rebutted by the employer's legitimate nondiscriminatory reason for the adverse action. Id. The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the proffered reasons are pretextual. Id.

Spratley established a prima facie case of retaliation. Spratley engaged in a protected activity when he filed his discrimination complaint and was discharged soon thereafter. Spratley alleges that the causal connection between the protected activity and his discharge is that he was fired after the Defendants became aware that he filed a discrimination complaint. See Williams, 871 F.2d at 457. However, mere knowledge of an EEOC complaint is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging an employee. Id. Spratley failed to establish that the

5

Defendants' proffered reasons for discharging him were a pretext for a true retaliatory motive.

Accordingly, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

6